UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

DANIEL G. ANDERSON; WILLIAM        :
COLLITON, M.D.; RICHARD P.         :
DELANEY, M.D.; GAETANO             :
MOLINARI, M.D.; RICHARD LORIA,     :
M.D.; LORENZO MARCOLIN, M.D.;      :
JAMES RONAN, M.D.; EDWARD          :
SHERIDAN, M.D.; EDWARD SOMA,       :
M.D.; and RICHARD USCINSKI, M.D.,  :
                                   :
            Plaintiffs,            :
                                   :
v.                                 :       C.A. No. _____
                                   :
BARACK HUSSEIN OBAMA, in his       :
official capacity as President of the United :
States,                            :       **COMPLAINT**
                                   :
            Defendant.             :

Plaintiffs, by way of complaint against the Defendant, allege the

following:

## NATURE OF ACTION

1.     This is an action for declaratory, injunctive and other necessary

and appropriate relief, brought under the Declaratory Judgment Act, 28

U.S.C. § 2201 et seq., seeking  (1) a declaratory judgment that the actions of

the Defendant, President Barack Obama, and the members of his White

House staff in intimidating and coercing Senator Ben Nelson of Nebraska to

vote in favor of the Senate health care reform bill known as the Patient

Protection and Affordable Care Act (H.R. 3590), and/or to vote in favor of a

measure to cut off all further debate on such bill, by threatening to take

executive actions detrimental to the citizens of Nebraska are (a) ultra vires

acts in excess of the powers of the President and (b) an usurpation,

absorption and use of constitutional legislative powers confided exclusively

to Congress in violation of the doctrine of separation of powers, and (2) the

entry of an injunction directing and ordering Defendant President

Obama to cease and desist from undertaking in the future to intimidate and

coerce any member of the Congress to vote in favor of any health care bill,

including the bill to be reported out of the House-Senate Conference, and/or

to vote in favor of cutting off debate on any such bill by making threats to

take executive action or actions that adversely affect the member's

constituents.

## PARTIES

2.  Plaintiff Daniel G. Anderson, a citizen of Maryland who resides in

Chevy Chase, Maryland, and who holds a degree in economics from Yale

University, is a former officer in the U.S. Navy and veteran of the Korean

War, and is now retired.

3.   Plaintiff William Colliton, M.D., a citizen of Maryland who resides in Bethesda, Maryland, is currently a Clinical Professor of Obstetrics and Gynecology at George Washington University Medical Center in Washington, D.C.

4. Plaintiff Richard P. Delaney, M.D., is a citizen of Maryland who resides in Silver Spring, Maryland, and is currently a General Practitioner with an active family practice of over fifty (50) years.

5.   Plaintiff Richard Loria, M.D., is a citizen of Virginia who resides in McLean, Virginia, whose medical specialty is Allergy and Immunology, and who currently works as a lecturer to the medical profession.

6.   Plaintiff Lorenzo Marcolin, M.D., is a citizen of Maryland who resides in Potomac, Maryland, and is an orthopedic physician.

7.   Plaintiff Gaetano Molinari, M.D., is a citizen of Maryland who resides in Chevy Chase, Maryland, and is currently a Neurologist and the Chairman Emeritus of the Department of Neurology at George Washington University in Washington, D.C.

8.   Plaintiff James Ronan, M.D., is a citizen of Maryland who resides in Potomac, Maryland, and is a cardiologist and the author of cardiology textbooks that are used in the medical profession.

9.  Plaintiff Edward Sheridan, M.D., a citizen and resident of Washington, D.C., is a psychiatrist and the former Chairman of the Department of Psychiatry at Georgetown University.

10.  Plaintiff Edward Soma, M.D., is a citizen of Maryland who resides in Kensington, Maryland, and is a radiologist, the Founding Chairman of the Department of Radiology and Nuclear Medicine of Holy Cross Hospital, and the former Chairman of the Board of the St. Jude's Hospital in Memphis, Tennessee.

11.  Plaintiff Ronald Uscinski, M.D., is a citizen of Virginia who resides in Great Falls, Virginia, is a neurosurgeon and a graduate of the Georgetown University School of Medicine, a Senior Surgeon with the U.S. Public Health Service, and an Assistant Professor in the Department of Neurological Surgery, Georgetown University and George Washington University.

12. Defendant Barack Hussein Obama is the President of the United States.

## JURISDICTION AND VENUE

13.  Jurisdiction over this action is conferred by the federal question jurisdiction statute, 28 U.S.C. § 1331.

14.  Venue is properly laid in this Court by virtue of 28 U.S.C. §

1391(b).

## FACTUAL BACKGROUND

15.  The Patient Protection and Affordable Care Act (H.R. 3590), hereinafter the Senate Bill, is a Senate health care reform bill that was introduced on the floor of the Senate on November 18, 2009.

16.  On December 21, 2009, the Senate voted to cut off all further debate on the Senate Bill by a vote of 60 to 40, thereby ending a Republican filibuster of the Senate Bill.

17.  On December 24, 2009, the Senate voted to pass the bill by a vote of 60 to 39, with only Jim Bunning (R-KY) failing to vote.

18.  On information and belief, in December 2009 prior to the aforementioned Senate votes, Defendant President Barack Obama and/or members of his White House Staff met in closed-door sessions with Senator Ben Nelson (D-NE) on several occasions.

19. On information and belief, during one or more of these closed-door meetings, Defendant President Obama and/or members of the White House staff with the knowledge and approval of the President, threatened to put Offutt Air Force Base on the Base Realignment and Closure (BRAC) list, thus slating the base for closure, unless Senator Nelson voted in favor of

the Senate Bill and/or voted in favor of cutting off all further debate on the Senate Bill.

20.  Offutt Air Force Base employs approximately 10,000 military and federal employees in Southeastern Nebraska and it is the headquarters of the Strategic Command (STRATCOM), the successor to the Strategic Air Command.

21.  On information and belief, a Senate aide to Senator Ben Nelson stated that the threat to place Offutt Air Force Base on the BRAC list was "a naked effort by Rahm Emanuel and the White House to extort Nelson's vote" and that the White House was "threatening to close a base vital to national security for what?"

## COUNT I - ULTRA VIRES CONDUCT

22.  Plaintiffs hereby incorporate the allegations of Paragraphs 1 through 21 of their Complaint as if fully set forth herein at length.

23.  Article II of the United States Constitution provides in part that "[t]he executive Power shall be vested in a President . . ."; that "he shall take Care that the Laws be faithfully executed"; and that he "shall be Commander in Chief of the Army and Navy of the United States."

24.  Article II, Section 3 of the Constitution further requires that the President "from time to time give to the Congress Information of the State

of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient." Subsumed within this Article II, Section 3 directive is a requirement not to foment division between the States.

25. The President also has a constitutional veto power. Specifically, after a bill has passed both Houses of Congress, but "before it becomes a Law," the bill must be presented to the President. If he approves, "he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the objections at large on their Journal, and shall proceed to reconsider it." U.S. Const., Art. I, § 7, cl. 2. The President's "return" of a bill, which is commonly described as a veto, can be overridden by a two-thirds vote in each house.

26. In the framework of the Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker.

27. The Constitution limits the President's functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad.

28. The Constitution is neither silent nor equivocal about who shall make laws that the President is to execute: Article I of the Constitution

provides that, "All legislative powers herein granted shall be vested in a Congress of the United States . . . ," and further provides that Congress may "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

29.  The Constitution does not subject this exclusive lawmaking power of Congress to presidential supervision or control.

30.  The President admittedly can help shape legislation prior to its presentment to him for signature.   Through statements of administration policy, staff and presidential discussions with members of Congress wherein the views of the President and the arguments in favor of those views are made known to such members, and public statements, the President can influence legislation.

31.  In addition, the President, pursuant to his Article I power to veto legislation, may prior to presentment threaten to veto legislation that contains what he considers to be unconstitutional provisions, or provisions that he objects to on policy grounds, and may thereby convince or coerce Congress to remove those provisions.

32.  Aside from his authority to issue veto threats, however, the
President cannot, prior to presentment, use a threat to exercise an otherwise
legitimate executive power, confided to him under Article II of the
Constitution, to intimidate or coerce individual members of the House of
Representatives, or to intimidate or coerce individual members of the
Senate, in the exercise of their exclusive constitutional authority to make
laws, without improperly exceeding his authority under the Constitution and
thereby acting ultra vires.

33.  Decisions as to whether or not to vote for a particular bill, or
whether or not to vote to cut off debate on a bill, are exclusively legislative
decisions for the members of Congress to make, and therefore it constitutes a
breach of trust and an abuse of the power confided in the President for the
President to attempt to impose his views on the members of Congress that a
particular bill should become law, or that debate on a particular bill should
be cut off, through coercion or intimidation of individual members of
Congress, including by threatening to take executive action that adversely
affects a member's House District or State unless that member votes in favor
of a particular bill.

34.  On information and belief, in or about December 2009 President
Obama and/or one or more of the members of his White House Staff acting

with his knowledge and approval, during one or more closed-door meetings, threatened a member of the United States Senate, namely Senator Ben Nelson of Nebraska, that the President would take action to shut down the Strategic Command base currently located within the State of Nebraska, with an attendant loss of thousands of jobs and millions of dollars of revenue to that State, unless Senator Nelson voted in favor of passage of the Senate Bill and/or voted in favor of a measure to cut off all debate on the Senate Bill.

35.   In threatening to take executive action adverse to the State of Nebraska unless Senator Nelson voted in favor of passage of the Senate Bill, the President abused his authority and acted in excess of his powers under the Constitution.

36.   The Senate subsequently, on December 21, 2009, passed a measure to cut off debate on the Senate health care reform bill by a vote of 60 to 40.  Senator Nelson voted in favor of this measure.

37.   Thereafter, on December 24, 2009, the Senate voted to pass the Senate health care bill by a vote of 60 to 39.  Senator Nelson voted in favor of passage of the bill.

38.   The Senate Bill must now be reconciled with a related House Bill (H.R. 3962, the Affordable Health Care for America Act) at a House-Senate

conference, and the resulting reconciled bill to be reported out of the

conference committee must be voted on again by both the House and the

Senate.

39.  Formal negotiations between conferees from the House and

Senate regarding the reconciliation of the House Bill with the Senate Bill are

scheduled to commence the first week of January 2010.

40.  On information and belief, one or more members of the White

House staff have made public statements that the President will be more

closely involved than ever before in the legislative process regarding the

House-Senate conference negotiations and the final House and Senate votes

on the health care reform bill to be reported out of conference committee.

The *Wall Street Journal* has reported that "Democratic leaders are already

saying that this won't be the usual conference, with public votes, but will be

negotiated by a few barons *plus White House Chief of Staff Rahm Emanuel*

in a backroom."  (Wall Street Journal, Review & Outlook, "The Senate

Postmortem," p. A10, c. 1, Dec. 26-27, 2009 (emphasis added), attached

hereto as Exhibit "B".)  The *Baltimore Sun* similarly has reported that

"[m]embers of the Obama administration, including the White House chief

of staff Rahm Emanuel will also be heavily involved in the talks" to

reconcile the House Bill with the Senate Bill.  (The Baltimore Sun, News,

"After passing 2 health bills, hill must now build bridge," p. 14, c. 1, Dec. 27, 2009, attached hereto as Exhibit "C".)  The *Baltimore Sun* further reports that White House Deputy Press Secretary Bill Burton has said that, "We've got two bills, one in the House, one in the Senate, they're 95 percent similar. *We're going to be actively working to iron out the rest of the differences and get a bill passed* and signed."  (*Id.* (emphasis added).)

41.  On information and belief, there is an imminent danger that the President will again engage in ultra vires acts of threatening one or more members of Congress with executive action adverse to their constituents unless those members vote in favor of the reconciled bill to be reported out of conference committee and/or vote in favor of cutting off debate on such reconciled bill.

42.  The Declaratory Judgment Act authorizes this Court, "[i]n a case of actual controversy within its jurisdiction, . . . [to] declare the rights and other legal relations of any interested party seeking such declaration," and to grant "[f]urther necessary or proper relief" based on such declaratory judgment, *see* 28 U.S.C. §§ 2201, 2202.

43.  The plaintiff physicians are "interested parties" as they will be adversely affected in the practice of their profession by the final passage of either the House Bill or the Senate Bill, or by a reconciled bill that contains

most of the provisions form either one or both of those bills.

44.   Plaintiff Richard P. Delaney, M.D., in his affidavit attached hereto as Exhibit "A", has summarized the adverse effects that would result from the passage of the House Bill, or of the Senate Bill, or of a combination of the two, as follows:

a. Such passage will cause "the loss of the practice of medicine as we have known it";

b.  Such passage "will eliminate that sacred binding of the dedicated physician and the sick patient";

c.  Such passage "will certainly insure that doctors who can retire will do so quickly, and they will remain retired";

d.  Such passage will force sick patients "into an impersonal system" that does not know the patients' names and is "operated by clock-watching civil servants";

e.  Such passage will force sick patients to wait for treatment, with such waiting "extending to months or even years";

f.  Such passage will mean that fewer young students will opt to go to medical school "merely to become a government functionary";

g.  Such passage will "deny[] free citizens access to the medical of their own choosing"; and

h.  Such passage will "force physicians to practice medicine deficiently."

45.  Plaintiffs will also be adversely affected by the many unconstitutional provisions that are in both the Senate Bill and the House Bill, and likely will remain in any final reconciled bill that is reported out of the House-Senate conference committee and passed by both Houses of Congress.  A summary of three of the more glaring constitutional defects in the bills can be found in a recent Op-Ed piece in the *Wall Street Journal*, authored by Senator Orrin Hatch (R-Utah), Kenneth Blackwell, a senior fellow with the Family Research Council, and Kenneth A. Klukowski, a fellow and senior legal analyst with the American Civil Rights Union.  (Wall Street Journal, Op-Ed Pages, January 2, 2010, attached hereto as Exhibit "D".)

WHEREFORE, Plaintiffs pray for the entry of judgment against the Defendant President Barack Hussein Obama

(A)	Declaring that the actions of the President and the members of his White House staff in intimidating and coercing Senator Ben Nelson to vote in favor of the Senate Bill and/or to vote in favor of cutting off further debate of the Senate Bill by threatening to take

14

executive actions detrimental to the citizens of Nebraska are ultra vires acts in excess of the powers of the President;

(B)      Enjoining the President and the members of his White House staff, including all agents and employees of the President and the White House staff, from undertaking in the future to intimidate and coerce any member of the Congress to vote in favor of any other health care reform bill, including the health care bill to be reported out of conference, or to vote in favor of cutting off further debate on any such bill, by making threats to take executive action or actions that adversely affect the member's constituents; and

(C)      For such additional and further relief as may be just or equitable.

## COUNT II - VIOLATION OF SEPARATION OF POWERS

46.  Plaintiffs hereby incorporate the allegations of Paragraphs 1 through 45 of their Complaint as if fully set forth herein at length.

47.  The principle of separation of powers, although not expressed in the Constitution in so many words, underlies and undergirds it.

48.  As Mr. Justice Brandeis once wrote, "[t]he doctrine of separation of powers was adopted by the Convention of 1787, not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was, not to

15

avoid friction, but, by means of the inevitable friction incident to the distribution of the governmental powers among three departments, to save the people from autocracy." *Myers v. United States*, 272 U.S. 52, 240, 293 (1926) (Brandeis, J., dissenting).

49. In Federalist No. 47, James Madison observed that, "*There can be no liberty where the legislative and executive powers are united in the same person* or body of magistrates . . .. The magistrate in whom the whole executive power resides cannot of himself make a law, though he can put a negative on every law . . .." (Emphasis added.)

50. In 1792, Thomas Jefferson related how he told President George Washington that "if the equilibrium of the three great bodies, Legislative, Executive and Judiciary, could be preserved, if the Legislature could be kept independent, I should never fear the result of such a government; but that *I could not but be uneasy when I saw that the Executive had swallowed up the Legislative branch*."

51. In his concurring opinion in *Youngstown Sheet & Tube v. Sawyer*, 343 U.S. 579, 629, 633 (1952), Justice Douglas observed: "The tragedy of such stalemates might be avoided by allowing the President use of some legislative authority. *The Framers with memories of the tyrannies produced by a blending of executive and legislative power rejected that political*

*arrangement.* . . . Such a step would most assuredly alter the pattern of the Constitution."

52.  A President cannot use or abuse his constitutional executive powers as leverage to gain control over the exercise of the constitutional legislative powers of Congress without improperly blending executive and legislative power and concentrating such dual power in the Executive branch, in violation of the doctrine of separation of powers.

53.  President Obama, by using or abusing his executive powers to coerce an individual member of the Senate to vote in favor of the Senate Bill and/or to vote in favor of cutting off all further debate on the Senate Bill and, by this action, implicitly sending a message that he is prepared, if necessary, to engage in further coercion of members of Congress to pass the reconciled health care reform bill that will be reported out of the House-Senate conference committee, has sought to usurp, absorb, gain control over and/or use the exclusive legislative authority of Congress in violation of the doctrine of separation of powers.

54.  To avoid the Executive from swallowing up the Legislative branch, the President must be restrained from engaging in the use or abuse of his executive powers to coerce individual members of Congress to vote in

favor of any health care reform bill that the President favors, or in favor of
cutting off debate on any health care reform bill that the President favors.

WHEREFORE, Plaintiffs pray for the entry of judgment against the
Defendant President Barack Hussein Obama

(A)     Declaring that the actions of the President and the members of
his White House staff in intimidating and coercing Senator Ben
Nelson to vote in favor of the Senate Bill and/or to vote in favor of
cutting off further debate on the Senate Bill by threatening to take
executive actions detrimental to the citizens of Nebraska
unconstitutionally have usurped, swallowed and absorbed the powers
of the Legislative branch of the Government in violation of the
doctrine of the separation of powers;

(B)     Enjoining the President and the members of his White House
staff, including all agents and employees of the President and the
White House staff, from undertaking in the future to intimidate and
coerce any member of the Congress to vote in favor of any health care
bill, including the health care bill to be reported out of conference, or
to cut off debate on any such bill by making threats to take executive
action or actions that adversely affect the member's constituents;

(C)      For such additional and further relief as may be just or

equitable.

_____

Rudolph Martin Palmer, Jr.
Bar No. 03594
Law Offices of Martin Palmer
21 Summit Avenue
Hagerstown, MD 21740
(301) 790-0640
(301) 790-0684 (Facsimile)
info@martinpalmer.com
Attorney for Plaintiffs