**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DANIEL G. ANDERSON; WILLIAM COLLITON, M.D.; RICHARD P. DELANEY, M.D.; GAETANO MOLINARI, M.D.; RICHARD LORIA, M.D.; LORENZO MARCOLIN, M.D.; JAMES RONAN, M.D.; EDWARD SHERIDAN, M.D.; EDWARD SOMA, M.D.; and RONALD UCINSKI, M.D., | ) ) ) ) ) ) ) ) ) | Case No. 8:10cv17<br><br>Judge Messitte |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BARACK HUSSEIN OBAMA, in his official capacity as President of the United States, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
AND IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs have moved for a preliminary injunction against the President in his official capacity, to restrain the President from "coerc[ing]" members of Congress to vote in favor of health care reform legislation.  Pls.' Prelim. Inj. Mot.  Plaintiffs have met none of the requirements for obtaining a preliminary injunction: they have not shown any real possibility—much less the requisite clear likelihood—of success on the merits, that they would suffer irreparable harm absent preliminary relief, that the balance of equities tips in their favor or that an injunction would be in the public interest.  On the contrary, Plaintiffs lack standing, their suit is plainly nonjusticiable, and there is no likelihood of harm to Plaintiffs in the absence of preliminary relief.  Moreover, the

relief Plaintiffs request is unprecedented and beyond the Court's power to grant.  The Court

should therefore deny the preliminary injunction motion and dismiss the Complaint.

## <u>BACKGROUND</u>

Health care reform has long been a major domestic issue in the United States.  As

President Obama said in a recent speech to Congress, "It has now been nearly a century since

Theodore Roosevelt first called for health care reform.  And ever since, nearly every President

and Congress, whether Democrat or Republican, has attempted to meet this challenge in some

way."  <u>Remarks by the President to a Joint Session of Congress on Health Care</u>, Sept. 9, 2009,

<u>available at</u> www.whitehouse.gov.  President Obama has urged Congress to enact comprehensive

health care reform, stating that the government's "collective failure" to act "has led us to the

breaking point," burdening taxpayers and placing "extraordinary hardships" on the uninsured.  <u>Id.</u>

The House passed a health care reform bill in November, 2009; the Senate passed a separate bill

in December, 2009.  Both bills would expand Medicaid coverage, prohibit certain insurance-

industry practices, create government-regulated exchanges where people could purchase health

insurance, and offer subsidies to make health insurance more affordable.

Plaintiffs are doctors who believe that these health care reform bills, if they become law,

will "destroy[] American medicine as our doctors have known and practiced it these many years."

Delaney Aff. at 21.  They assert that President Obama "coerc[ed]" and "intimidat[ed]" Senator

Nelson of Nebraska to vote in favor of the Senate bill, pointing to a newspaper article alleging

that President Obama threatened to close an Air Force base in Nebraska unless Senator Nelson

voted for the bill.  Am. Compl. ¶ 1; Pls.' Prelim. Inj. Mem. at 2, 17.  They claim this action

exceeded the President's authority and violated the separation of powers.  Am. Compl. ¶ 1.

Plaintiffs also assert that the President exceeded his authority and violated the separation of powers by inviting union leaders to negotiate with Congressmen over provisions of the bills.  Am. Compl. ¶ 42, 56.

Plaintiffs ask the Court to enjoin the President from "undertaking in the future to intimidate and coerce any member of the Congress to vote in favor of any other health care reform bill," and to enjoin the President from enforcing such a bill if it should become law.  Am. Compl. ¶ 46, 56.  They also ask for a declaratory judgment that the President violated the Constitution by "intimidating and coercing Senator Ben Nelson to vote in favor of the Senate Bill," and that "any resulting reconciled . . . health care reform bill" is "null and void."  Id. Plaintiffs also move for a preliminary injunction to restrain "Defendant President Barack Hussein Obama and the members of his White House staff . . . from undertaking in the future to intimidate or coerce any member of the Congress to voter in favor of any health care bill . . . or to vote in favor of any measure to cut off debate on any such bill, through the use of threats to take executive action."  Pls.' Prelim. Inj. Mot.

## ARGUMENT

Plaintiffs have met none of the requirements for obtaining a preliminary injunction.  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 376 (2008);  Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 345 (4th Cir. 2009).  It is "never awarded as of right," Winter, 129 S. Ct. at 376, but only when the plaintiff has carried his burden of establishing four strict requirements:  that the plaintiff "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."
Id. at 374; Real Truth About Obama, 575 F.3d at 346.

These four requirements are not merely factors for courts to balance or weigh: "all four requirements must be satisfied" by a clear showing before a court can enter a preliminary injunction. Real Truth About Obama, 575 F.3d at 345–46. Plaintiffs here cannot satisfy any of the four requirements, and a preliminary injunction is plainly inappropriate. Moreover, as it is clear that Plaintiffs cannot succeed on the merits, the Court should dismiss the Complaint.

## I.    PLAINTIFFS CANNOT PREVAIL ON THE MERITS.

Because "a preliminary injunction affords relief before trial," the plaintiff must first "make a clear showing that it will likely succeed on the merits at trial." Real Truth About Obama, 575 F.3d 346. The Supreme Court's recent ruling in Winter sets a higher bar for plaintiffs than the Fourth Circuit's previous precedents: "The Winter requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the [Circuit's previous] Blackwelder requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." Id. at 346–47. Doubts about the court's jurisdiction make "success more *unlikely* due to potential impediments to even reaching the merits," and are a basis for denying a preliminary injunction. Munaf v. Geren, 128 S.Ct. 2207, 2219 (2008).

Plaintiffs here cannot carry their "heavy burden." Real Truth About Obama, 575 F.3d at 349. The Complaint alleges that the President violated the separation of powers and exceeded his constitutional authority by coercing Senator Nelson to vote for a health care reform bill and by meeting with Congressmen and union leaders to negotiate over the bill's provisions. Am. Compl. ¶ 1. However, the Complaint itself suffers from insuperable separation of powers problems.

4

The Supreme Court has repeatedly emphasized that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)). This "'case or controversy' requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded." Allen v. Wright, 468 U.S. 737, 750 (1984). The "several doctrines that have grown up to elaborate that requirement" reflect "concern about the proper —and properly limited —role of the courts in a democratic society." Id. (internal quotation marks omitted). Plaintiffs' Complaint violates at least two of these justiciability doctrines: Plaintiffs lack standing, and the issues they raise are political questions. The Court should therefore deny the preliminary injunction, and dismiss the Complaint.

## A.   PLAINTIFFS LACK STANDING BECAUSE THEY HAVE SUFFERED NO INJURY AND THERE IS NO RELIEF THE COURT CAN ORDER.

Because the Constitution gives the judiciary power only over "cases" and "controversies," Plaintiffs must have standing to bring this lawsuit. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). That Plaintiffs are requesting declaratory as well as injunctive relief does not change the standing requirement; the constitutional limitation still applies, and the Declaratory Judgment Act is explicitly limited to "case[s] of actual controversy." 28 U.S.C. § 2201; Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239–40 (1937). The "irreducible constitutional minimum of standing" consists of three requirements: First, "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Second, there "must be a causal connection

between the injury and the conduct complained of—the injury has to be fairly traceable to the

challenged action of the defendant." And finally, "it must be likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560–61

(citations and internal alterations omitted). Plaintiffs lack at least two of these three irreducible

requirements: there is no injury, and no redressability.

**1.       Plaintiffs Have Suffered No Injury to a Legally Protected Interest.**

Plaintiffs lack standing because they have suffered no legally cognizable injury. The

Complaint asserts that "plaintiff physicians" have standing because they "will be adversely affected

in the practice of their profession by the final passage of either the House Bill or the Senate Bill,

or by a reconciled bill that contains most of the provisions" of those bills.[1] Am. Compl. ¶ 45. The

Complaint then refers to an attached affidavit from a Plaintiff, as having "summarized the adverse

effects." Id. ¶ 46. The affidavit asserts in general terms that if either of the bills became law, that

law would "force physicians to practice medicine deficiently," and would cause "the loss of the

practice of medicine as we have known it," and "eliminate that sacred binding of the dedicated

physician and the sick patient." Delaney Aff. at 21, 23–24. The affidavit further asserts that

"socialized medicine" will "harm" Plaintiffs' patients, and will cause many doctors to retire and

students not to pursue the medical profession. Id. at 21, 23.

None of these purported harms to the medical profession constitutes a legally cognizable

injury to Plaintiffs. To establish a legally cognizable injury, Plaintiffs must show three things:

first, the "invasion of a legally protected interest;" second, that the injury is "concrete and

---

[1] Plaintiff Daniel G. Anderson is not a physician but a "citizen of Maryland . . . who holds a degree in economics." Am. Compl. ¶ 2. The Complaint contains no explanation at all as to why Mr. Anderson would have standing.

particularized;" and third, that the injury is "actual or imminent." Lujan, 504 U.S. at 560; Dixon v. Edwards, 290 F.3d 699, 711 (4th Cir. 2002). Plaintiffs cannot make any of these showings. First, the Complaint and affidavit do not identify any legally protected interest that Plaintiffs possess or any particular provision of either bill that, if it became law, would invade that interest. Even supposing that Plaintiffs have a legally protected right to practice medicine, they point to no legal right to "the practice of medicine as we have known it" or to the "sacred binding of the dedicated physician and the sick patient." Delaney Aff. at 21, 23.

Second, any harm to Plaintiffs is not concrete or particularized. To be concrete and particularized, "the alleged injury must affect the plaintiff in a personal and individual way," not as a "concerned bystander[]." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 156 (4th Cir. 2000) (internal quotation marks omitted). Plaintiffs do not identify any harm from health care reform that is personal to them; rather, they complain of potential injury to the practice of medicine as a whole. Many of the supposed harms Plaintiffs identify do not apply to them at all. For instance, the affidavit asserts that "fewer young students" will choose to become doctors if the health reform bills become law, but Plaintiffs are not themselves young students facing this choice, nor do they explain how the hypothetical choices of young students will affect them personally. Delaney Aff. at 23; Am. Compl. ¶ 2–11. Likewise, the affidavit asserts that if the health care reform bills become law, many doctors will retire, but no Plaintiff asserts that he personally will be forced into retirement. Id. The assertion that "socialized medicine" will "harm" patients suffers from the same defect. "The injury in fact requirement precludes those with merely generalized grievances from bringing suit to vindicate an interest common to the entire public. A plaintiff . . . must somehow differentiate himself from the mass of

people who may find the conduct of which he complains to be objectionable." <u>Friends of the Earth</u>, 204 F.3d at 156.  Plaintiffs' theory, that the health care reform bills would injure the practice of medicine, would extend standing indiscriminately to everyone in America:  Those who are not doctors can expect at some point to be patients.

Finally, Plaintiffs lack standing because any harm to them is not actual or imminent.  To support standing, Plaintiffs' injury must be "actual or imminent, not conjectural or hypothetical." <u>Lujan</u>, 504 U.S. at 560.  "The purpose of the imminence requirement is to ensure that the alleged injury is not too speculative for Article III purposes. . . . The injury-in-fact prong of the standing inquiry cannot be met by citizens hypothesizing about the speculative effects" of government actions.  <u>Friends for Ferrell Parkway v. Stasko</u>, 282 F.3d 315, 322 (4th Cir. 2002) (internal quotation marks omitted).  Here, Plaintiffs' supposed injuries are highly speculative.  The health care reform bills cannot affect Plaintiffs or anyone else unless and until they become law and that law is enforced.  The effect that a bill might have if it became a law is inherently a matter of conjecture and speculation; no one can say for certain that any bill will become a law, or what the provisions of that hypothetical law will be, or what effect these hypothetical provisions will have if and when they are enforced.  Plaintiffs' "pure conjecture" about health care reform, based on "numerous, questionable assumptions," cannot support standing.  <u>Friends for Ferrell Parkway</u>, 282 F.3d at 323.

**2.     There is No Redressability Because the Court Cannot Order Any of the Relief that Plaintiffs Request.**

The President is the only defendant in this suit, and the Complaint makes clear that he is being sued solely in his official capacity.  Am. Compl. ¶ 12.  Plaintiffs ask the Court to enjoin the

President from "coerc[ing] any member of the Congress to vote in favor of any health care bill," and from enforcing the health care bill if Congress passes it.  Am. Compl. ¶ 56.  Plaintiffs further ask for a declaratory judgment that the President coerced Senator Nelson to vote for the health care reform bill, and that this coercion was beyond the President's authority, violated the separation of powers, and renders the bill void.  Id. ¶ 1, 46, 56.  All of this relief would operate upon the President himself, in his official capacity, and in the performance of non-ministerial actions.  All of it is accordingly beyond the Court's power to grant.

"The issuance of an injunction or a declaratory judgment against the President draws the Court into serious separation-of-powers issues.  In particular, there is long-standing legal authority that the courts cannot issue injunctions against the co-equal Executive and Legislative branches of our government."  Newdow v. Bush, 391 F.Supp.2d 95, 105 (D.D.C. 2005).  This authority goes back well over a century.  In 1866, Mississippi asked the Supreme Court to enjoin President Johnson from enforcing the Reconstruction Acts, on the ground that the Acts unconstitutionally dissolved state governments.  Mississippi v. Johnson, 71 U.S. 475 (1866).  The Supreme Court refused to allow Mississippi to file the lawsuit, holding that it was "fully satisfied that this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties; and that no such bill ought to be received by us."  Id. at 501.  While the judiciary can review the constitutionality of executive actions, the Court held, it is a violation of the separation of powers for it to enjoin the President:  "The Congress is the legislative department of the government; the President is the executive department. Neither can be restrained in its action by the judicial department; though the acts of both, when performed, are, in proper cases, subject to its cognizance."  Id. at 500; Kendall v. United States, 37 U.S. 524, 610 (1838) ("The executive

power is vested in a President; and as far as his powers are derived from the constitution, he is

beyond the reach of any other department, except in the mode prescribed by the constitution

through the impeaching power.").

    In Franklin v. Massachusetts, 505 U.S. 788 (1992), the Supreme Court reiterated that "in

general this court has no jurisdiction of a bill to enjoin the President in the performance of his

official duties." Id. at 802–03 (plurality opinion) (quoting Mississippi, 71 U.S. at 501). The

district court in that case had held certain census methods invalid, and accordingly ordered the

President to recalculate the number of representatives that each state was entitled to, and to

transmit the new calculation to Congress. Id. at 790–91. The Supreme Court held the injunction

improper, with a plurality remarking that "the District Court's grant of injunctive relief against the

President himself is extraordinary, and should have raised judicial eyebrows." Id. at 802.

Concurring, Justice Scalia agreed that "the principals in whom the executive and legislative

powers are ultimately vested—viz., the President and the Congress (as opposed to their

agents)—may not be ordered to perform particular executive or legislative acts at the behest of

the Judiciary." Id. at 827.

    These cases clearly bar the relief that Plaintiffs request, which would operate against the

President himself, in his official capacity. Am. Compl. ¶ 46, 56. While presidential immunity

"does not bar every exercise of jurisdiction over the President of the United States," Nixon v.

Fitzgerald, 457 U.S. 731, 753–54 (1982); United States v. Moussaoui, 382 F.3d 453, 469 (4th

Cir. 2004), none of the exceptions to the bar is present here. Plaintiffs rely primarily on

Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952), in contending that an injunction

is appropriate. Pls.' Prelim. Inj. Mem. at 5–11. That case is inapposite, as it involved no

injunction on the President; rather, the Court enjoined the Secretary of Commerce from enforcing a presidential order.  Id. at 584, 660.  As the Supreme Court has explained, "[w]hile injunctive relief against executive officials like the Secretary of Commerce is within the courts' power," injunctive relief against the President himself is not.  Franklin, 505 U.S. at 802.  "The President's unique status under the Constitution distinguishes him from other executive officials," and requires a far higher level of immunity.  Nixon, 457 U.S. at 750.  Nor do the other cases Plaintiffs cite provide any support for their contention that the Court may enjoin the President; indeed, the President was not a party to any of these cases.  I.N.S. v. Chadha, 462 U.S. 919 (1983) (holding one-house Congressional veto unconstitutional); Bowsher v. Synar, 478 U.S. 714 (1986) (holding Comptroller General may not exercise executive powers); Myers v. United States, 272 U.S. 52 (1926) (holding limitation on President's power to remove executive official unconstitutional).

The other exceptions to presidential immunity are equally inapplicable.  For instance, presidential immunity is limited where the President is sued for actions in his private capacity. Clinton v. Jones, 520 U.S. 681 (1997) (the President can be sued for sexual harassment that occurred before he took office).  This suit, however, is against the President in his official capacity.  The actions that Plaintiffs challenge—presidential meetings with Congressmen and others to urge them to propose or support some type of legislative action—are clearly official rather than private.  It makes no difference that Plaintiffs contend that the President lacked constitutional authority for these actions.  The Supreme Court has rejected this distinction, holding that injunctive relief against the President for allegedly unconstitutional acts is equally unavailable "whether it describes him as President or as a citizen of a State."  Mississippi, 71 U.S. at 501; Nixon, 457 U.S. at 756 (Presidential immunity is not limited to cases where the President

11

acted within his legal authority, as "[t]his construction would subject the President to trial on virtually every allegation that an action was unlawful . . . [it] thus would deprive absolute immunity of its intended effect.").  In limited circumstances, the President may also be subject to third-party subpoenas in criminal cases, United States v. Nixon, 418 U.S. 683 (1974), but this is a civil suit and the President is a party.

Finally, the Supreme Court has left open the question whether the judiciary can enjoin the President to perform a purely ministerial duty imposed by statute, although it has never purported to exercise any such authority.  Mississippi, 71 U.S. at 498; Swan v. Clinton, 100 F.3d 973, 978 (D.C. Cir. 1996).  However, the presidential actions that Plaintiffs challenge are plainly not ministerial.  A ministerial duty is a "simple, definite" statutory duty, "in respect to which nothing is left to discretion."  Mississippi, 71 U.S. at 498; Franklin, 505 U.S. at 799 (holding that calculating the number of representatives and transmitting the calculation to Congress is not a purely ministerial duty).  Plaintiffs allege that the President "intimidat[ed] and coerc[ed]" Senator Nelson to vote in favor of a bill, and met with union leaders and Congressmen to discuss the bill.  Am. Compl. ¶ 1, 18–22, 42.  These are "political" activities, not ministerial duties imposed by statute.  Mississippi, 71 U.S. at 499.

The judiciary's inability to enjoin the President does not mean that the President is above the law or that executive actions are unreviewable.  "There remains the constitutional remedy of impeachment," as well as the "constant scrutiny" of the President by the media and Congress, and the President's concern for public opinion and re-election.  Nixon, 457 U.S. at 757.  Also, courts can review the constitutionality of the President's actions in suits against lower executive officials.  Franklin, 505 U.S. at 802; Youngstown Sheet & Tube, 343 U.S. 579.

This rule is both sensible and necessary; injunctions against the President himself would be "an absurd and excessive extravagance," and would create a serious danger of "collision" between co-equal branches of government. <u>Mississippi</u>, 71 U.S. at 499, 501. <u>Nixon v. Fitzgerald</u>, holding that the President is "entitled to absolute immunity from damages liability predicated on his official acts," 457 U.S. at 749, explained that "[b]ecause of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government." <u>Id.</u> at 751. To carry out his duties, the President must "make the most sensitive and far-reaching decisions entrusted to any official under our constitutional system" and must "concern himself with matters likely to arouse the most intense feelings." <u>Id.</u> at 752 (internal quotation marks omitted). Without absolute immunity from suit, "the visibility of his office and the effect of his actions on countless people" would make the President "an easily identifiable target for suits." <u>Id.</u> at 753. The President's "[c]ognizance of this personal vulnerability" would deprive him of his "ability to deal fearlessly and impartially with the duties of his office" and would "distract [him] from his public duties, to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." <u>Id.</u> at 752–53 (internal quotation marks omitted).

Injunctions and declaratory judgments against the President would have even more disastrous consequences than the civil liability the Court considered in <u>Nixon</u>. "Many of the reasons [the Court] gave in <u>Nixon v. Fitzgerald</u> for acknowledging an absolute Presidential immunity from civil damages for official acts apply with equal, if not greater, force to requests for declaratory or injunctive relief in official-capacity suits." <u>Franklin</u>, 505 U.S. at 827 (Scalia, J., concurring). Allowing "declaratory or injunctive relief against the President personally would not

only distract him from his constitutional responsibility to 'take Care that the Laws be faithfully executed,' but, as more and more disgruntled plaintiffs add his name to their complaints, would produce needless head-on confrontations between district judges and the Chief Executive." Id. at 828.

Although the Supreme Court has never directly decided whether declaratory relief is available against the President, the reasoning of Nixon v. Fitzgerald, barring damages liability, and Franklin v. Massachusetts, barring injunctive relief, "is equally applicable to declaratory judgments." Newdow, 391 F.Supp.2d at 105; Franklin, 505 U.S. at 827 (Scalia, J., concurring) ("[W]e cannot issue a declaratory judgment against the President.  It is incompatible with his constitutional position that he can be compelled to defend his executive actions before a court."). "To conclude otherwise, would be to render meaningless the words of the Supreme Court . . . that injunctions and declaratory judgments may not be issued against the President.  A district court should not disregard the strong pronouncements of the Supreme Court in the absence of other controlling law." Newdow, 391 F.Supp.2d at 106–07.

Even if the Court could grant some of the relief that Plaintiffs request, this suit would still lack redressability.  Plaintiffs are not Congressmen who feel "coerced" or "threatened" by the President.  Rather, Plaintiffs are doctors and private citizens. Am. Compl. ¶ 2–11.  Their only claim to injury is that if the health care reform bills pending in the House and Senate become law, then the enforcement of that law would injure them. Id. at ¶ 45–46.  But it is sheer speculation that if this Court were to enjoin the President from involvement in health care reform, or to declare the pending bills void, then no similar health care reform bill would become law.  This law would have the same effect on Plaintiffs as if the Court had granted no relief.  Because "it must be

14

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision,"

Plaintiffs cannot show redressability.  Lujan, 504 U.S. at 561 (internal quotation marks omitted).

## B.   THE SCOPE OF THE PRESIDENT'S ROLE IN INFLUENCING LEGISLATION IS A NONJUSTICIABLE POLITICAL QUESTION.

Finally, Plaintiffs have no likelihood of success on the merits because the Complaint raises

only nonjusticiable political questions.  The gravamen of the Complaint is that the President

overstepped his constitutional role in attempting to influence legislation and secure its passage.

Plaintiffs contend that it violates the separation of powers for the President to "use a threat to

exercise an otherwise legitimate executive power . . . to intimidate or coerce individual members"

of Congress to vote for a bill, and for the President to arrange a meeting between Congressmen

and union leaders to discuss the bill.  Pls.' Prelim. Inj. Mem. at 7.  Plaintiffs have cited no other

case challenging the President's authority to encourage or discourage members of Congress from

voting for pending legislation, or to arrange meetings to discuss pending legislation,  and the

Government is aware of none.  However, the issue is clearly nonjusticiable.

The political question doctrine, which goes back as far as Marbury v. Madison, 5 U.S. 137

(1803), provides that courts cannot rule on questions more properly reserved to the political

branches.  Id. at 166 (recognizing that certain political acts "can never be examinable by the

courts").  Thus, "[t]he nonjusticiability of a political question is primarily a function of the

separation of powers."  Baker v. Carr, 369 U.S. 186, 210 (1962).  In determining whether an

issue is a political question, "the appropriateness under our system of government of attributing

finality to the action of the political departments and also the lack of satisfactory criteria for a

judicial determination are dominant considerations."  Id. (quoting Coleman v. Miller, 307 U.S.

433, 454–55 (1939)).  The Supreme Court has laid out several factors making an issue

nonjusticiable:

> Prominent on the surface of any case held to involve a political question is found a
> textually demonstrable constitutional commitment of the issue to a coordinate political
> department; or a lack of judicially discoverable and manageable standards for resolving it;
> or the impossibility of deciding without an initial policy determination of a kind clearly for
> nonjudicial discretion; or the impossibility of a court's undertaking independent resolution
> without expressing lack of the respect due coordinate branches of government; or an
> unusual need for unquestioning adherence to a political decision already made; or the
> potentiality of embarrassment from multifarious pronouncements by various departments
> on one question.

Id. at 217.  The presence of  "any one" of these factors "may carry a controversy beyond

justiciable bounds."  Tiffany v. United States, 931 F.2d 271, 276 (4th Cir. 1991).

At least three of the Baker factors are present here: it is impossible for the court to

undertake an independent resolution of the issue without expressing a lack of the respect due to

coordinate branches of government; there is a textually demonstrable constitutional commitment

of the issue to a coordinate political department; and there are no judicially discoverable and

manageable standards for resolving the issue.  Baker, 369 U.S. at 217.  First, the Court cannot

consider the merits of this issue without evincing a lack of respect for both Congress and the

President.  Plaintiffs ask this Court to review "closed-door meetings" between President Obama

and Senator Nelson, during which they supposedly discussed a bill pending in the Senate, and a

meeting between President Obama, Congressmen, and union leaders, again to discuss pending

legislation.  Am. Compl. ¶ 18, 19, 42.  Furthermore, Plaintiffs ask for an injunction that would

restrict what the President could say to members of Congress and others about pending

legislation.  Any such inquiry or injunction would interject the Court into political discussions

about bills before Congress and would seriously interfere with the relationship between the political branches.

Second, the issue of presidential influence on pending legislation is textually committed to the political branches.  The Constitution gives Congress [a]ll legislative powers" of the federal government, including the power to "make all Laws which shall be necessary and proper for carrying into Execution" its enumerated powers.  U.S. Const, Art. I, §§ 1, 8.  Also, "[b]oth Article I and Article II assign responsibilities to the President that directly relate to the lawmaking process."  <u>Clinton v. City of New York</u>, 524 U.S. 417, 438 (1998).[2]  The President has the power to sign or return a bill passed by Congress, and the power "to recommend to their Consideration such Measures as he shall judge necessary and expedient."  U.S. Const., Art. I, § 7, Art. II, § 3.  The judicial authority, by contrast, extends only to "Cases" and "Controversies" under federal laws and the Constitution.  U.S. Const., Art. III, § 2; <u>see</u> <u>Hayburn's Case</u>, 2 U.S. 408 (1792) (holding that the Court lacks the power to issue advisory opinions).  It is difficult to imagine a case or controversy proper for judicial resolution concerning a bill that has not already become a law.  Indeed, <u>Baker</u> held that challenges to "the enacting process" for legislation generally present political questions.  369 U.S. at 214–15.[3]

---

[2] Although the President was one of the defendants in <u>Clinton,</u> the Court noted that none of the plaintiffs "sought injunctive relief against the President."  524 U.S. at 426 n.9.  The case therefore did not raise the issues discussed in Section I.A.2, <u>supra</u>.

[3] Once a bill becomes a law, claims that the law violates the bicameralism and presentment clauses are justiciable.  <u>Chadha</u>, 462 U.S. 919; <u>Clinton</u>, 524 U.S. 417.  However, the Government is not aware of any case where a court has agreed to hear a challenge to a bill before it has become a law.

It is equally difficult to imagine judicially manageable standards that could be applied to this area.  The Complaint concedes that "[t]he President admittedly can help shape legislation . . . [t]hrough statements of administration policy, staff and presidential discussions with members of Congress," as well as public remarks.  Am. Compl. ¶ 31.  Indeed, Presidents throughout the country's history have been involved with pending legislation, including by drafting bills and persuading Congressmen to vote for them.  Clinton, 524 U.S. at 438 (the President "may initiate and influence legislative proposals"); see Lawrence Chamberlain, The President, Congress, and Legislation, Pol. Sci. Q., Vol. 61, No. 1 (Mar., 1946), pp. 42-60 (exploring the history of presidential involvement in legislation from Washington's administration to the twentieth century, and discussing the widespread view that "the president has indeed become 'chief legislator'").  Plaintiffs do not offer any standards by which the judiciary is to separate legitimate "presidential discussions with members of Congress" from supposedly illegitimate presidential "coercion" and "intimidation" of Congressmen.  Pls.' Prelim. Inj. Mem. at 7–8.  Plaintiffs cannot make the required "clear showing that [they] will likely succeed on the merits at trial."  Real Truth About Obama, 575 F.3d at 346.  Indeed, it is plain that the issues are nonjusticiable and that the Court lacks jurisdiction.  In addition to denying Plaintiff's motion for a preliminary injunction, the Court should therefore dismiss the Complaint.

## II.     PLAINTIFFS WILL NOT BE IRREPARABLY HARMED ABSENT PRELIMINARY RELIEF.

Plaintiffs also do not meet the remaining requirements for a preliminary injunction.  The second requirement is "that the plaintiff make a clear showing that it is likely to be irreparably harmed absent preliminary relief."  Real Truth About Obama, 575 F.3d at 347.  A showing of a "possibility" of irreparable harm is insufficient; the Supreme Court's "frequently reiterated

18

standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." <u>Winter</u>, 129 S.Ct. at 375.  The threatened irreparable injury must be "substantial and immediate." <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 103 (1983).

Again, Plaintiffs cannot come close to meeting this standard.  They have not asserted injuries sufficient to support Article III standing, much less shown that they are likely to be irreparably harmed in the absence of a preliminary injunction. <u>See</u> Section I.A.1, <u>supra</u>.  Plaintiffs' asserted harms rest on speculation that bills currently pending in Congress might become law, and that this hypothetical law might be enforced in a way that would harm the medical profession, of which Plaintiffs are members.  Am. Compl. ¶ 45; Delaney Aff. at 21–24.  Plaintiffs cannot show that they personally will suffer any injury to a legally protected interest—much less an irreparable injury—if these bills became law. <u>See</u> Section I.A.1, <u>supra</u>.  Even aside from that problem, the bills cannot possibly inflict any harm on Plaintiffs until they become law and their provisions go into effect.  It is unlikely that this chain of events will occur before the Court can decide this case; even assuming that the House or Senate health care reform bill will imminently become law, many of the provisions of these bills would not take effect until 2013 or 2014. <u>See, e.g.</u>, H.R. 3590, 111th Cong. §§ 1321, 1401.  Plaintiffs could mount whatever legal challenges they wish to make at that time, and a court could then determine if they are within the court's jurisdiction and legally cognizable.  Plaintiffs therefore cannot establish any "likelihood of substantial and immediate irreparable injury" to them in the absence of preliminary relief. <u>Lyons</u>, 461 U.S. at 103.

Plaintiffs nonetheless argue that they satisfy the irreparable injury requirement because they have alleged that the President is violating the Constitution, and "constitutional violations

. . . generally constitute irreparable harm." Pls.' Prelim. Inj. Mem. at 12; Nelson v. NASA, 530

F.3d 865, 882 (9th Cir. 2008). However, the cases that Plaintiffs cite hold only that constitutional

injuries are often "irreparable." Id.; see Monterey Mechanical Co. v. Wilson, 125 F.3d 702, 715

(9th Cir. 1997). They do not hold that a plaintiff can establish that he is "likely to be irreparably

harmed absent preliminary relief" merely by alleging that the defendant is violating the

Constitution, without making any further showing that the supposed constitutional violation will

injure the plaintiff at all. Real Truth About Obama, 575 F.3d at 347. Any such holding would be

in direct conflict with a long line of Supreme Court precedent, including Los Angeles v. Lyons.

In Lyons, the Supreme Court overturned a preliminary injunction against the allegedly

unconstitutional use of chokeholds by police, because the plaintiff had not demonstrated that he

personally was likely to be choked by police in the future, although he had been in the past. 461

U.S. at 99-100, 105–06; see Hein v. Freedom from Religion Foundation, Inc., 551 U.S. 587, 599

(2007) ("We have no power *per se* to review and annul acts of Congress on the ground that they

are unconstitutional . . . . The party who invokes the power must be able to show not only that the

statute is invalid but that he has sustained or is immediately in danger of sustaining some direct

injury as the result of its enforcement." (quoting Frothingham v. Mellon, 262 U.S. 447, 488

(1923)).

## III.   THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH STRONGLY AGAINST GRANTING PRELIMINARY RELIEF.

Plaintiffs also cannot satisfy the final two requirements for obtaining a preliminary

injunction: the balance of equities is not in their favor, and an injunction would not be in the public

interest. Real Truth About Obama, 575 F.3d at 346. The Fourth Circuit has stressed that "courts

of equity should pay *particular regard* for the public consequences in employing the extraordinary

remedy of injunction." Id. at 347.  Here, any potential injury to Plaintiffs is extremely remote and speculative; the law that they believe will injure them has not even been passed, much less enforced against them.  See Sections I.A.1, II, supra.  Plaintiffs therefore will not be harmed at all if the motion for a preliminary injunction is denied.

On the other hand, the preliminary injunction they request would be exceedingly burdensome for both the President and Congress, and would damage the public interest. Plaintiffs ask the Court to enjoin "the President and the members of his White House staff . . . from undertaking in the future to intimidate or coerce any member of the Congress to vote in favor of any health care bill . . . through the use of threats to take executive action."  Pls.' Prelim. Inj. Mem. at 16.  This injunction would drastically limit the President's role in the debate over health care reform, since nearly any remark he might make on the subject could be interpreted as a "threat[] to take executive action."  Id.  Such a limitation on the President would deprive Congress of his guidance on a major issue facing the public, to the detriment of the political branches and the public itself.  It would also be an unprecedented interference with the functioning of co-equal branches of government.

Indeed, even if Plaintiffs otherwise satisfied the requirements for obtaining a preliminary injunction, the injunction would clearly be beyond the Court's power to grant.  Section I.A.2 supra; Mississippi v. Johnson, 71 U.S. 475; Franklin v. Massachusetts, 505 U.S. 788.  Finally, as it is clear that Plaintiffs lack standing and the issues are nonjusticiable, the Court should dismiss the Complaint.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be

DENIED and Defendant's motion to dismiss should be GRANTED.


Dated: February 8, 2010                    Respectfully submitted,

                                           TONY WEST
                                           Assistant Attorney General

                                           ROD J. ROSENSTEIN
                                           United States Attorney

                                           */s/ Erika Myers*

                                           SHEILA LIEBER
                                           Deputy Director
                                           ERIKA L. MYERS (PA Bar # 307574)
                                           Erika.L.Myers@usdoj.gov
                                           Attorneys, Federal Programs Branch
                                           U.S. Department of Justice
                                           Civil Division
                                           Federal Programs Branch
                                           P.O. Box 883; Room 7303
                                           Washington, D.C. 20044
                                           Tel: (202) 305-0747
                                           Fax: (202) 616-8470

                                           Counsel for Defendant