UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DANIEL G. ANDERSON; JENNIFER R. BOYER; WILLIAM COLLITON, M.D.; RICHARD P. DELANEY, M.D.; GAETANO MOLINARI, M.D.; RICHARD LORIA, M.D.; LORENZO MARCOLIN, M.D.; JAMES RONAN, M.D.; EDWARD SHERIDAN, M.D.; EDWARD SOMA, M.D.; and RONALD UCINSKI, M.D., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | C.A. No. 8:10-CV- |
| v. | : | 00017-PJM |
| | : | |
| BARACK HUSSEIN OBAMA, in his official capacity as President of the United States; NANCY PELOSI, in her official capacity as Speaker of the House of Representatives; STENY HOYER, in his official capacity as Majority Leader of the House of Representatives; and JAMES E. CLYBURN, in his official capacity as the Majority Whip of the House of Representatives, | : | |
| Defendants. | : | |

Plaintiffs, by way of complaint against the Defendants, allege the

following:

## NATURE OF ACTION

1.    This is an action for declaratory, injunctive and other

necessary and appropriate relief, brought under the Declaratory

Judgment Act, 28 U.S.C. § 2201 et seq., seeking  (1) a declaratory

judgment that the actions of the Defendant, President Barack Obama, and the members of his White House staff in intimidating and coercing Senator Ben Nelson of Nebraska to vote in favor of the Senate health care reform bill known as the Patient Protection and Affordable Care Act (H.R. 3590), and/or to vote in favor of a measure to cut off all further debate on such bill, by threatening to take executive actions detrimental to the citizens of Nebraska are (a) ultra vires acts in excess of the powers of the President, (b) an usurpation, absorption and use of constitutional legislative powers confided exclusively to Congress in violation of the doctrine of separation of powers, and (c) render any resulting reconciled or merged health care reform bill presented by Congress to the President null and void as a product of such ultra vires and unconstitutional acts; (2) the entry of an injunction directing and ordering Defendant President Obama to cease and desist from undertaking in the future to intimidate and coerce any member of the Congress to vote in favor of any health care bill, including the bill to be reported out of the House-Senate Conference, and/or to vote in favor of cutting off debate on any such bill by making threats to take executive action or actions that adversely affect the member's constituents, or, in the alternative, enjoining the enforcement of any resulting reconciled or merged health care reform bill that is presented by Congress to the President and that

is signed by the President; (3) a declaratory judgment that the actions of the

Defendants Nancy Pelosi, Steny Hoyer, and James E. Clyburn in attempting

to pass and/or in obtaining the passage through the House of Representatives

of a health care reform bill initiated in the Senate that raises revenues

through the imposition of several new taxes and the increase in several

existing taxes violates Article I, Section 7 of the United States Constitution;

(4) a declaratory judgment that the actions of the Defendants Nancy Pelosi,

Steny Hoyer, and James E. Clyburn in attempting to pass and/or in obtaining

the passage through the House of Representatives of the Senate health care

reform bill without a direct vote by the members of the House on that bill,

through a rules procedure known as "Deem and Pass" or the "Slaughter

Rule", violates Article I, Section 7 of the United States Constitution; and (5)

the entry of an injunction restraining Defendant President Obama from

signing any health care reform bill that is passed by the House in violation of

Article I, Section 7 of the United States Constitution and/or enjoining the

enforcement of any such health care reform bill.

## **PARTIES**

2.  Plaintiff Daniel G. Anderson, a citizen of Maryland and a federal

taxpayer who resides in Chevy Chase, Maryland, and who holds a degree in

economics from Yale University, is a former officer in the U.S. Navy and

veteran of the Korean War, and is now retired.

3.  Plaintiff Jennifer R. Boyer, a citizen and resident of Washington, D.C. and a federal taxpayer, is a graduate of the University of Kentucky and has been admitted to the University of Kentucky's medical school.

4.  Plaintiff William Colliton, M.D., a citizen of Maryland and a federal taxpayer, who resides in Bethesda, Maryland, is currently a Clinical Professor of Obstetrics and Gynecology at George Washington University Medical Center in Washington, D.C.

5. Plaintiff Richard P. Delaney, M.D., is a citizen of Maryland and a federal taxpayer, who resides in Silver Spring, Maryland, and is currently a General Practitioner with an active family practice of over fifty (50) years.

6.  Plaintiff Richard Loria, M.D., is a citizen of Virginia and a federal taxpayer who resides in McLean, Virginia, whose medical specialty is Allergy and Immunology, and who currently works as a lecturer to the medical profession.

7.  Plaintiff Lorenzo Marcolin, M.D., is a citizen of Maryland and a federal taxpayer who resides in Potomac, Maryland, and is an orthopedic physician.

8.  Plaintiff Gaetano Molinari, M.D., is a citizen of Maryland and a federal taxpayer who resides in Chevy Chase, Maryland, and is currently a

Neurologist and the Chairman Emeritus of the Department of Neurology at George Washington University in Washington, D.C.

9.  Plaintiff James Ronan, M.D., is a citizen of Maryland and a federal taxpayer who resides in Potomac, Maryland, and is a cardiologist and the author of cardiology textbooks that are used in the medical profession.

10.  Plaintiff Edward Sheridan, M.D., a citizen and resident of Washington, D.C. and a federal taxpayer, is a psychiatrist and the former Chairman of the Department of Psychiatry at Georgetown University.

11.  Plaintiff Edward Soma, M.D., is a citizen of Maryland and a federal taxpayer who resides in Kensington, Maryland, and is a radiologist, the Founding Chairman of the Department of Radiology and Nuclear Medicine of Holy Cross Hospital, and the former Chairman of the Board of the St. Jude's Hospital in Memphis, Tennessee.

12.  Plaintiff Ronald Ucinski, M.D., is a citizen of Virginia and a federal taxpayer who resides in Great Falls, Virginia, is a neurosurgeon and a graduate of the Georgetown University School of Medicine, a Senior Surgeon with the U.S. Public Health Service, and an Assistant Professor in the Department of Neurological Surgery, Georgetown University and George Washington University.

13. Defendant Barack Hussein Obama is the President of the

United States.

14.   Defendant Nancy Pelosi (D CA) is the Speaker of the House of
Representatives.

15.   Defendant Steny Hoyer (D MD) is the Majority Leader of the
House of Representatives.

16.  Defendant James E. Clyburn (D SC) is the Majority Whip of the
House of Representatives.

## JURISDICTION AND VENUE

17.  Jurisdiction over this action is conferred by the federal question
jurisdiction statute, 28 U.S.C. § 1331.

18.  Venue is properly laid in this Court by virtue of 28 U.S.C. §
1391(b).

## FACTUAL BACKGROUND

19.  The Patient Protection and Affordable Care Act (H.R. 3590),
hereinafter the Senate Bill, is a Senate health care reform bill that was

initiated in the Senate by being introduced on the floor of the Senate on November 18, 2009.

20.  On December 21, 2009, the Senate voted to cut off all further debate on the Senate Bill by a vote of 60 to 40, thereby ending a Republican filibuster of the Senate Bill.

21.  On December 24, 2009, the Senate voted to pass the bill by a vote of 60 to 39, with only Jim Bunning (R-KY) failing to vote.

22.  On information and belief, in December 2009 prior to the aforementioned Senate votes, Defendant President Barack Obama and/or members of his White House Staff met in closed-door sessions with Senator Ben Nelson (D-NE) on several occasions.

23. On information and belief, during one or more of these closed-door meetings, Defendant President Obama and/or members of the White House staff with the knowledge and approval of the President, threatened to put Offutt Air Force Base on the Base Realignment and Closure (BRAC) list, thus slating the base for closure, unless Senator Nelson voted in favor of the Senate Bill and/or voted in favor of cutting off all further debate on the Senate Bill.

24.  Offutt Air Force Base employs approximately 10,000 military and federal employees in Southeastern Nebraska and it is the headquarters of the

Strategic Command (STRATCOM), the successor to the Strategic Air Command.

25.  On information and belief, a Senate aide to Senator Ben Nelson stated that the threat to place Offutt Air Force Base on the BRAC list was "a naked effort by Rahm Emanuel and the White House to extort Nelson's vote" and that the White House was "threatening to close a base vital to national security for what?"

26.  On January 19, 2010, in a special election held in the State of Massachusetts, Scott Brown (R MA) was elected to the Senate, ending the Democrats' 60-member, filibuster-proof majority in the Senate.

27.  As a result, the House Democratic leadership has decided to undertake to pass the Senate Bill through the House of Representatives, instead of attempting to conference with the Senate on a compromise or reconciled bill that would then be passed by both houses of Congress before being presented to the President for his signature, even though (a) the Senate Bill was initiated in the Senate and (b) the Senate Bill contains several provisions imposing new taxes and increasing existing taxes.

28.  In addition, the House Democratic leadership is actively considering securing the passage of the Senate Bill through the House of Representatives through a rules procedure commonly known as "Deem and

Pass" or the "Slaughter Rule", whereby no direct vote will be taken by the members of the House of Representatives on the Senate Bill.  Instead the members of the House of Representatives will vote directly on a companion or "sidecar" reconciliation bill of amendments to the Senate Bill and the Senate Bill will then be "deemed" to have passed the House of Representatives.

29.  On information and belief, a vote in the House of Representatives on the Senate Bill, and/or a vote in the House of Representatives on the companion reconciliation measure that will be "deemed" to have resulted in the passage by the House of the Senate Bill, has been scheduled for as early as Saturday, March 20, 2010.

## COUNT I  -  ULTRA VIRES CONDUCT

30.  Plaintiffs hereby incorporate the allegations of Paragraphs 1 through 29 of their Complaint as if fully set forth herein at length.

31.  Article II of the United States Constitution provides in part that "[t]he executive Power shall be vested in a President . . ."; that "he shall take Care that the Laws be faithfully executed"; and that he "shall be Commander in Chief of the Army and Navy of the United States."

32.  Article II, Section 3 of the Constitution further requires that the President "from time to time give to the Congress Information of the State

of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient." Subsumed within this Article II, Section 3 directive is a requirement not to foment division between the States.

33. The President also has a constitutional veto power. Specifically, after a bill has passed both Houses of Congress, but "before it becomes a Law," the bill must be presented to the President. If he approves, "he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the objections at large on their Journal, and shall proceed to reconsider it." U.S. Const., Art. I, § 7, cl. 2. The President's "return" of a bill, which is commonly described as a veto, can be overridden by a two-thirds vote in each house.

34. In the framework of the Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker.

35. The Constitution limits the President's functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad.

36. The Constitution is neither silent nor equivocal about who shall make laws that the President is to execute: Article I of the Constitution

provides that, "All legislative powers herein granted shall be vested in a

Congress of the United States . . . ," and further provides that Congress may

"make all Laws which shall be necessary and proper for carrying into

Execution the foregoing Powers, and all other Powers vested by this

Constitution in the Government of the United States, or in any Department

or Officer thereof."

37.  The Constitution does not subject this exclusive lawmaking

power of Congress to presidential supervision or control.

38.  The President admittedly can help shape legislation prior to its

presentment to him for signature.   Through statements of administration

policy, staff and presidential discussions with members of Congress wherein

the views of the President and the arguments in favor of those views are

made known to such members, and public statements, the President can

influence legislation.

39.  In addition, the President, pursuant to his Article I power to veto

legislation, may prior to presentment threaten to veto legislation that

contains what he considers to be unconstitutional provisions, or provisions

that he objects to on policy grounds, and may thereby convince or coerce

Congress to remove those provisions.

40.  Aside from his authority to issue veto threats, however, the

President cannot, prior to presentment, use a threat to exercise an otherwise legitimate executive power, confided to him under Article II of the Constitution, to intimidate or coerce individual members of the House of Representatives, or to intimidate or coerce individual members of the Senate, in the exercise of their exclusive constitutional authority to make laws, without improperly exceeding his authority under the Constitution and thereby acting ultra vires.

41.  Decisions as to whether or not to vote for a particular bill, or whether or not to vote to cut off debate on a bill, are exclusively legislative decisions for the members of Congress to make, and therefore it constitutes a breach of trust and an abuse of the power confided in the President for the President to attempt to impose his views on the members of Congress that a particular bill should become law, or that debate on a particular bill should be cut off, through coercion or intimidation of individual members of Congress, including by threatening to take executive action that adversely affects a member's House District or State unless that member votes in favor of a particular bill.

42.  On information and belief, in or about December 2009 President Obama and/or one or more of the members of his White House Staff acting with his knowledge and approval, during one or more closed-door meetings,

threatened a member of the United States Senate, namely Senator Ben

Nelson of Nebraska, that the President would take action to shut down the

Strategic Command base currently located within the State of Nebraska,

with an attendant loss of thousands of jobs and millions of dollars of revenue

to that State, unless Senator Nelson voted in favor of passage of the Senate

Bill and/or voted in favor of a measure to cut off all debate on the Senate

Bill.

43.   In threatening to take executive action adverse to the State of

Nebraska unless Senator Nelson voted in favor of passage of the Senate Bill,

the President abused his authority and acted in excess of his powers under

the Constitution.

44.  The Senate subsequently, on December 21, 2009, passed a

measure to cut off debate on the Senate health care reform bill by a vote of

60 to 40.  Senator Nelson voted in favor of this measure.

45.  Thereafter, on December 24, 2009, the Senate voted to pass the

Senate health care bill by a vote of 60 to 39.  Senator Nelson voted in favor

of passage of the bill.

46.  On February 25, 2010, President Obama held a so-called "health

care summit" at the White House, during which he went beyond his limited

constitutional powers to participate in the legislative process as specified by

Article I, Section 7 and Article II, Section 3 of the Constitution, by seeking directly to negotiate a health care measure with members of Congress as if President Obama and Vice President Joseph Biden were part of the legislative branch.

47.  Article I, Section 7 of the Constitution limits the President's participation in the legislative process to a veto after a bill has been passed, and precludes the President from participating in the legislative process leading up to the passage of a bill, which he sought to do at the health care summit.

48.  On information and belief, there is an imminent danger that the President will again engage in ultra vires acts of threatening one or more members of the House of Representatives with executive action adverse to their constituents unless those members vote in favor of the Senate Bill and/or the companion/sidecar "reconciliation" bill setting forth certain amendments to the Senate Bill.

49.  The Declaratory Judgment Act authorizes this Court, "[i]n a case of actual controversy within its jurisdiction, . . . [to] declare the rights and other legal relations of any interested party seeking such declaration," and to grant "[f]urther necessary or proper relief" based on such declaratory judgment, *see* 28 U.S.C. §§ 2201, 2202.

50.  The plaintiffs, including the plaintiff physicians, are "interested parties" as they will be adversely affected in the practice of their profession by the final passage of the Senate Bill and its presentation to the President for his signature, regardless of whether or not the companion reconciliation bill is subsequently passed by the Senate.

51.  Plaintiff Richard P. Delaney, M.D., in his affidavit attached hereto as Exhibit "A", has summarized the adverse effects that would result from the passage and signing into law of the Senate Bill, as follows:

a. Such passage will cause "the loss of the practice of medicine as we have known it";

b.  Such passage "will eliminate that sacred binding of the dedicated physician and the sick patient";

c.  Such passage "will certainly insure that doctors who can retire will do so quickly, and they will remain retired";

d.  Such passage will force sick patients "into an impersonal system" that does not know the patients' names and is "operated by clock-watching civil servants";

e.  Such passage will force sick patients to wait for treatment, with

such waiting "extending to months or even years";

f.  Such passage will mean that fewer young students will opt to go to medical school "merely to become a government functionary";

g.  Such passage will "deny[] free citizens access to the medical of their own choosing"; and

h.  Such passage will "force physicians to practice medicine deficiently."

52.  Plaintiff Ronald Ucinski, M.D., in his affidavit attached hereto as Exhibit "B", has summarized the adverse effects that would result to his clinical practice, and to his patients' health, as follows:

a. Such passage would impose "additional layers of personnel who are to be involved with [medical care] decision making," involving "further delay, unnecessary effort, paperwork, and reduced efficiency, and ultimately, paralysis";

b.  Such passage will mean that patients "are going to become more ill and even die while waiting for treatment, as has happened in every country that has adopted such a system";

c.  Such passage will make it more difficult for Dr. Ucinski to keep his clinical practice "in the black";

d.  Such passage will "drive away the very practitioners [of

medicine] who have made health care in the United States the eminent
system it has become and replace medical practice with medical
processing"; and

e.  Such passage will cause the country's "more capable citizens"
to "seek medical care elsewhere [than the United States], as [users of]
other socialized systems have indeed sought care here, before the
advent of this prospective program."

53.  Plaintiff Jennifer R. Boyer, in her affidavit attached hereto as
Exhibit "C", states that she received an offer of admittance to medical
school in the spring of 2009, that she deferred her acceptance and has
spent almost a year "analyzing the cost of my dream [of becoming a
doctor] against the benefit," and that she "would have gladly taken on
the debt [of the cost of attending medical school] and the workload
necessary to fulfill my dream because the relationships that doctors
develop with their patients over an entire career are invaluable."  In
view of the prospective passage of President Obama's health care plan,
however, Plaintiff Boyer believes that doctors will become "nothing
more than a name on a list of providers," that "[t]he level of care doctors
are able to provide will be limited to the allowed services on
government-funded health insurance plans," and that she therefore

thinks that it "makes more sense to become a Physician's Assistant."

54.   Plaintiffs will also be adversely affected by the many unconstitutional provisions that are in the Senate Bill and likely will remain regardless of whether or not the amendments set forth in the companion reconciliation bill are passed by the Senate and signed into law by the President.   A summary of three of the more glaring constitutional defects in the bills can be found in a recent Op-Ed piece in the *Wall Street Journal*, authored by Senator Orrin Hatch (R-Utah), Kenneth Blackwell, a senior fellow with the Family Research Council, and Kenneth A. Klukowski, a fellow and senior legal analyst with the American Civil Rights Union.   (Wall Street Journal, Op-Ed Pages, January 2, 2010.)

WHEREFORE, Plaintiffs pray for the entry of judgment against the Defendant President Barack Hussein Obama

(A) Declaring that the actions of the President and the members of his White House staff in intimidating and coercing Senator Ben Nelson to vote in favor of the Senate Bill and/or to vote in favor of cutting off further debate of the Senate Bill by threatening to take executive actions detrimental to the citizens of Nebraska are ultra vires acts in excess of the powers of the President;

18

(B)      Declaring that the actions of the President in holding a health

care summit at the White House during which he sought to negotiate a

health care measure with members of Congress as if he and the Vice

President were part of the legislative branch are ultra vires acts in

excess of the powers of the President;

(C)      Declaring any resulting health care reform bill presented by

Congress to the President to be null and void as a product of such

ultra vires and unconstitutional acts;

(D) Enjoining the President and the members of his White House staff,

including all agents and employees of the President and the White

House staff, from undertaking in the future to intimidate and coerce

any member of the Congress to vote in favor of any health care bill,

including the Senate Bill, or to vote in favor of cutting off further

debate on any such bill, by making threats to take executive action or

actions that adversely affect the member's constituents;

(E)      Enjoining the enforcement of any resulting health care bill that

is presented by Congress to the President and is signed by the

President; and

(F)      For such additional and further relief as may be just or

equitable.

## COUNT II  -  VIOLATION OF SEPARATION OF POWERS

56.  Plaintiffs hereby incorporate the allegations of Paragraphs 1 through 55 of their Complaint as if fully set forth herein at length.

57.  The principle of separation of powers, although not expressed in the Constitution in so many words, underlies and undergirds it.

58.  As Mr. Justice Brandeis once wrote, "[t]he doctrine of separation of powers was adopted by the Convention of 1787, not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was, not to avoid friction, but, by means of the inevitable friction incident to the distribution of the governmental powers among three departments, to save the people from autocracy." *Myers v. United States*, 272 U.S. 52, 240, 293 (1926) (Brandeis, J., dissenting).

59.  In Federalist No. 47, James Madison observed that, "*There can be no liberty where the legislative and executive powers are united in the same person* or body of magistrates . . .. The magistrate in whom the whole executive power resides cannot of himself make a law, though he can put a negative on every law . . .."  (Emphasis added.)

60.  In 1792, Thomas Jefferson related how he told President George Washington that "if the equilibrium of the three great bodies, Legislative, Executive and Judiciary, could be preserved, if the Legislature could be kept

independent, I should never fear the result of such a government; but that *I could not but be uneasy when I saw that the Executive had swallowed up the Legislative branch*."

61. In his concurring opinion in *Youngstown Sheet & Tube v. Sawyer*, 343 U.S. 579, 629, 633 (1952), Justice Douglas observed: "The tragedy of such stalemates might be avoided by allowing the President use of some legislative authority. *The Framers with memories of the tyrannies produced by a blending of executive and legislative power rejected that political arrangement*. . . . Such a step would most assuredly alter the pattern of the Constitution."

62.  A President cannot use or abuse his constitutional executive powers as leverage to gain control over the exercise of the constitutional legislative powers of Congress without improperly blending executive and legislative power and concentrating such dual power in the Executive branch, in violation of the doctrine of separation of powers.

63.  President Obama, by using or abusing his executive powers to coerce an individual member of the Senate to vote in favor of the Senate Bill and/or to vote in favor of cutting off all further debate on the Senate Bill and, by this action, implicitly sending a message that he is prepared, if necessary, to engage in further coercion of members of Congress to pass the

reconciled health care reform bill that will be reported out of the House-Senate conference committee, has sought to usurp, absorb, gain control over and/or use the exclusive legislative authority of Congress in violation of the doctrine of separation of powers.

64.   To avoid the Executive from swallowing up the Legislative branch, the President must be restrained from engaging in the use or abuse of his executive powers to coerce individual members of Congress to vote in favor of any health care reform bill that the President favors, or in favor of cutting off debate on any health care reform bill that the President favors.

WHEREFORE, Plaintiffs pray for the entry of judgment against the Defendant President Barack Hussein Obama

(A) Declaring that the actions of the President and the members of his White House staff in intimidating and coercing Senator Ben Nelson to vote in favor of the Senate Bill and/or to vote in favor of cutting off further debate on the Senate Bill by threatening to take executive actions detrimental to the citizens of Nebraska unconstitutionally have usurped, swallowed and absorbed the powers of the Legislative branch of the Government in violation of the doctrine of the separation of powers;

(B)       Declaring any resulting health care reform bill presented by

Congress to the President to be null and void as a product of such

ultra vires and unconstitutional acts;

(C)     Enjoining the President and the members of his White House

staff, including all agents and employees of the President and the

White House staff, from undertaking in the future to intimidate and

coerce any member of the Congress to vote in favor of any health care

bill, including the Senate Bill, or to cut off debate on any such bill by

making threats to take executive action or actions that adversely affect

the member's constituents;

(D)     Enjoining the enforcement and implementation of any resulting

health care reform bill that is presented by Congress to the President

and is signed by the President; and

(E)     For such additional and further relief as may be just or

equitable.


### COUNT III  -  VIOLATION OF ORIGINATION CLAUSE

65.  Plaintiffs hereby incorporate the allegations of Paragraphs 1

through 64 of their Complaint as if fully set forth herein at length.

66.  Article I, Section 7, Clause 1 of the Constitution, the Origination

Clause, states specifically that "[a]ll Bills for raising revenue shall originate

in the House; but the Senate may propose or concur with Amendments as on other Bills."

67. The Origination Clause incorporates the principle of "No taxation without representation."

68. Because the Senate is not representative of the people, but of the States, the Origination Clause requires that revenue raising bills must originate in the House of Representatives, which is representative of the people in order to ensure that the "no taxation without representation" principle is followed in the legislative process.

69. The Senate Bill that is now before the House of Representatives is not an amendment to the House Bill, but is rather a bill that originated in the Senate.

70. The Senate Bill is a revenue raising measure, in that it raises revenue through the imposition of taxes, fees, and limits on deductions, including, but not limited to, a tax on cosmetic surgery, higher payroll taxes on top earners, a tax on high end, "luxury" health insurance plans, the imposition of fees on health insurance companies, the imposition of fees on drug manufacturers, the imposition of fees on the manufacturers of medical devices, the setting of a higher floor for deducting medical expenses, and the imposition of a cap on flexible health spending accounts.

71.  If the House of Representatives passes the Senate Bill before the reconciliation process is begun, then the House will be passing a revenue raising bill that originated in the Senate and not in the House, in violation of Article I, Section 7, Clause 1 of the United States Constitution.

72.  If, on the other hand, the House of Representatives begins the reconciliation process first, involving the passage by the House of a package of amendments to the Senate Bill, in order to claim that the health care bill "originated" in the House, such action would constitute a ruse or subterfuge to avoid the mandate of Article I, Section 7, Clause 1 that all revenue raising bills must originate in the House.

73.  The reconciliation process cannot initiate the passage of the Senate Bill in the House, since the Senate Bill has already been initiated in the Senate.

74.  A re-initiation of the Senate Bill in the House of Representatives does not satisfy the mandate of the Origination Clause.

WHEREFORE, Plaintiffs pray for the entry of judgment against the Defendants

(A)     Declaring that passage of the Senate Bill by the House of Representatives constitutes the passage of a revenue raising bill originating in the Senate in violation of Article I, Section 7, Clause 1

of the United States Constitution;

(B)    Declaring the Senate Bill, if passed by the House of

Representatives and/or signed into law by the President, null and void

as passed in violation of Article I, Section 7, Clause 1 of the United

States Constitution; and

(C)    Enjoining the President from signing the Senate Bill upon it

being passed by the House of Representatives and presented to

President for his signature; and

(D)    Enjoining the enforcement and implementation of any resulting

health care reform bill that is presented by Congress to the President

and is signed by the President; and

(E)    For such additional and further relief as may be just or

equitable.


## COUNT IV – VOTE ON SAME BILL AS SENATE

75. Plaintiffs hereby incorporate the allegations of Paragraphs 1

through 74 of their Complaint as if fully set forth herein at length.

76.  Even assuming a reconciliation process begun by the House

Budget Committee of the House of Representatives constitutes the initiation

of the Senate Bill and its revenue raising measures in the House as required

by the Origination Clause, such an initiation would require the House to avoid voting on the Senate Bill.

77. On information and belief, the House Rules Committee, under the chairmanship of Louise Slaughter (D NY) is in the process of crafting a rule that will "deem" the Senate Bill to have passed, even though it will not be voted on directly by the members of the House, which rule is known as "Deem and Pass" or the "Slaughter Rule."

78. Passage of the Senate Bill by the House without the members of the House voting directly on the Senate Bill would violate Article I, Section 7 of the Constitution, which requires that before a bill can "become a law," the House and Senate must vote on the exact same bill that contains the exact same text.

79. Voting on a companion reconciliation or sidecar bill, containing a package of amendments to the Senate Bill, which vote is then deemed by a House rule to constitute passage of the Senate Bill itself, is not a vote on the exact same bill and the exact same text as the bill that the Senate voted on, and would violate the requirements of Article I, Section 7 of the Constitution for when a bill can "become a law."

WHEREFORE, Plaintiffs pray for the entry of judgment against the Defendants

(A)    Declaring that passage of the Senate Bill by the House of Representatives without the members of the House voting directly on the Senate Bill violates Article I, Section 7 of the United States Constitution;

(B)    Declaring the Senate Bill, if passed by the House of Representatives pursuant to the "Deem and Pass" or "Slaughter Rule" so that the members of the House do not vote directly on the Senate Bill, is null and void as passed in violation of the requirements prescribed by Article I, Section 7;

(C)    Enjoining the President from signing the Senate Bill upon it being passed by the House of Representatives pursuant to "Deem and Pass" or the "Slaughter Rule" and presented to President for his signature;

(D)    Enjoining the enforcement and implementation of any resulting health care reform bill that is presented by Congress to the President and is signed by the President; and

(E)    For such additional and further relief as may be just or equitable.

_____

R. Martin Palmer
Law Offices of Martin Palmer
21 Summit Avenue
Hagerstown, MD 21740
(301) 790-0640
(301) 790-0684 (Facsimile)
info@martinpalmer.com
Attorney for Plaintiffs