UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANIEL G. ANDERSON; WILLIAM COLLITON, M.D.; RICHARD P. DELANEY, M.D.; GAETANO MOLINARI, M.D.; RICHARD LORIA, M.D.; LORENZO MARCOLIN, M.D.; JAMES RONAN, M.D.; EDWARD SHERIDAN, M.D.; EDWARD SOMA, M.D.; and RONALD UCINSKI, M.D., | : : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No.  8:10-CV-00017-PJM |
| BARACK HUSSEIN OBAMA, in his official capacity as President of the United States, | : : : : : | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| Defendant. | : : | |

## INTRODUCTION

Plaintiffs, by and through undersigned counsel, hereby submit this

memorandum of law in support of their Motion for Preliminary Injunction.

## STATEMENT OF FACTS

The Patient Protection and Affordable Care Act (H.R. 3590), hereinafter the

Senate Bill, is a Senate health care reform bill that was introduced on the floor of the

Senate on November 18, 2009, and therefore originated in the Senate.  On December 21,

2009, the Senate voted to cut off all further debate on the Senate Bill by a vote of 60 to

40, thereby ending a Republican filibuster of the Senate Bill.  On December 24, 2009, the

Senate voted to pass the bill by a vote of 60 to 39, with only Jim Bunning (R-KY) failing

to vote.

On January 19, 2010, in a special election held in the State of Massachusetts, Scott Brown (R MA) was elected to the Senate, ending the Democrats' 60-member, filibuster-proof majority in the Senate. As a result, the House Democratic leadership has decided to undertake to pass the Senate Bill through the House of Representatives, instead of attempting to conference with the Senate on a compromise or reconciled bill that would then be passed by both houses of Congress before being presented to the President for his signature, even though (a) the Senate Bill was initiated in the Senate and (b) the Senate Bill contains several provisions imposing new taxes and increasing existing taxes.

In addition, the House Democratic leadership is actively considering securing the passage of the Senate Bill through the House of Representatives through a House rules procedure commonly known as "Deem and Pass" or the "Slaughter Rule", whereby no direct vote will be taken by the members of the House of Representatives on the Senate Bill.  Instead the members of the House of Representatives will vote directly on a companion or "sidecar" reconciliation bill of amendments to the Senate Bill and the Senate Bill will then be "deemed" to have passed the House of Representatives.

On information and belief, a vote in the House of Representatives on the Senate Bill, and/or a vote in the House of Representatives on the companion reconciliation measure that will be "deemed" to have resulted in the passage by the House of the Senate Bill, has been scheduled for as early as Saturday, March 20, 2010.

## ARGUMENT

**I.     Plaintiffs Have Shown That They Are Likely To Succeed On The Merits.**

The purpose of preliminary equitable relief is "to preserve the status quo pending the outcome of litigation." *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006), *cert. denied*, 549 U.S. 1317 (2007), quoting *Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969). To obtain a preliminary injunction, the moving party must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365, 374 (2008); *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346-347 (4th Cir. 2009). The plaintiff bears the burden of showing that each of these factors supports granting the injunction. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

As will be shown below, Plaintiffs meet the first factor as they are likely to succeed on the merits.

**A. Passage by the House of the Senate Bill Violates the Origination Clause.**

The Origination Clause mandates that "[a]ll bills for raising Revenue shall originate in the House of Representatives."  U.S. Const., Art. I, § 7, cl. 1; *see United States v. Munoz-Flores*, 495 U.S. 385, 387 (1990).  As the Supreme Court elaborated in *Munoz-Flores*,

> In the case of "Bills for raising Revenue," § 7 requires that they originate in the House before they can be properly passed by the two Houses and presented to the President.  The Origination Clause is no less a requirement than the rest of [Section 7] because 'it does not specify what consequences follow from an improper origination,' post, at 402. None of the Constitution's commands explicitly sets out a remedy for its violation. Nevertheless, the principle that the courts will strike down a law when Congress has passed it in violation of such a command has been well settled for almost two centuries.  *See, e.g., Marbury v. Madison*, 1 Cranch 137, 176-180 (1803). That principle applies whether or not the constitutional provision expressly describes the effects that follow from its violation.

495 U.S. at 396-397.

The bill in question, moreover, is one for "raising Revenue."  Thus, the Senate Bill raises revenue through the imposition of taxes, fees, and limits on deductions, including, but not limited to, a tax on cosmetic surgery, higher payroll taxes on top earners, a tax on high end, "luxury" health insurance plans, the imposition of fees on health insurance companies, the imposition of fees on drug manufacturers, the imposition of fees on the manufacturers of medical devices, the setting of a higher floor for deducting medical expenses, and the imposition of a cap on flexible health spending accounts.  Furthermore, the health care subsidies and programs financed by these taxes will benefit groups of citizens who are "entirely unrelated to the persons paying for the program[s]."  *See United States v. Munoz-Florez*, 495 U.S. at 400 n. 7 (not reaching question "[w]hether a bill would be 'for raising Revenue' where the connection between payor and program was more attenuated . . .").

Secondly, the bill in question, The Patient Protection and Affordable Care Act (H.R. 3590), hereinafter "the Senate Bill," is a Senate health care reform bill that was initiated in the Senate by being introduced on the floor of the Senate on November 18, 2009.  Consequently, passage of this revenue-raising bill by the House of Representatives

fails to meet the requirements of the Origination Clause and would render any resulting

law subject to being struck down as null and void.

**B.  Deeming the Senate Bill Passed by the House Violates the Requirements of Article I, Section 7.**

Article I, Section 7 of the Constitution that, in order for a bill to "become a law," the exact same bill with the exact same text must be approved by both the House and the Senate before the that text is presented to the President to be signed.  *See* U.S. Const. Art. I, § 7; *Clinton v. City of New York*, 524 U.S. 417, 448 (1998).

On information and belief, the House Rules Committee, under the chairmanship of Louise Slaughter (D NY) is in the process of crafting a rule that will "deem" the Senate Bill to have passed, even though it will not be voted on directly by the members of the House, which rule is known as "Deem and Pass" or the "Slaughter Rule."  Specifically, the members of the House will vote on a companion or "sidecar" bill that contains a package of amendments to the Senate Bill, and pursuant to the newly crafted House rule the Senate Bill will be "deemed" to have passed with the approval of the companion measure.

Voting on a companion reconciliation or sidecar bill, containing a package of amendments to the Senate Bill, which vote is then "deemed" by a House rule to constitute passage of the Senate Bill itself, is not a vote on the exact same bill and the exact same text as the bill that the Senate voted on, and would violate the requirements of Article I, Section 7 of the Constitution for when a bill can "become a law."

In sum, Plaintiffs are likely to succeed on the merits of the constitutional claims that passage by the House of the Senate Bill will result in a bill that violates the

Origination Clause and/or cannot "become a law" for failure to meet the requirements of Article I, Section 7 of the Constitution.

## II.    Plaintiffs Will Likely Be Irreparably Harmed Absent Issuance Of A Preliminary Injunction.

A plaintiff must make a "clear showing" of a likelihood irreparable harm because the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.  *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d at 812.  The required irreparable harm must be neither remote nor speculative but actual and imminent.  *Id.*

"Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008), *pet. for cert. filed Nov. 2, 2009* (Sup. Ct.) (No. 09-530) , citing *Monterey Mechanic Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) ("[A]n alleged constitutional infringement will often alone constitute irreparable harm."); *see also Preston v. Thompson*, 589 F.2d 300, 303 n. 3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy would certainly serve the public interest."). Plaintiffs have alleged in their proposed Second Amended Complaint  that passage by the House of the Senate Bill will violate the Origination Clause and/or the requirements of Article I, Section 7 of the Constitution.  These constitutional violations cannot be adequately remedied through awards of monetary damages.

Furthermore, Plaintiff physicians will further be irreparably harmed if the requested preliminary injunction does not issue.  As Drs. Delaney and Ucinsky have

summarized in their affidavits attached to the proposed Second Amended

Complaint, passage, enforcement, and implementation of the Senate bill would have

a severe detrimental effect on the doctors' practice of medicine, on the health and

well being of their patients, and on the nature of the unique physician-patient

relationship, injuries that by their very nature cannot be remedied through an award

of money damages.

Finally, the irreparable harm is actual and imminent.  A vote in the House of

Representatives on the Senate Bill, and/or a vote in the House of Representatives on the

companion reconciliation measure that will be "deemed" to have resulted in the passage

by the House of the Senate Bill pursuant to the "Slaughter Rule", has been scheduled for

as early as Saturday, March 20, 2010.

In short, Plaintiffs have made a clear showing that they are likely to suffer

irreparable harm absent issuance of a preliminary injunction.

### III.  The Balance of Equities Tips in Favor of Issuing the Requested Preliminary Injunction.

The balance of equities tips decidedly in favor of the Plaintiffs.  The likelihood

of irreparable harm if a preliminary injunction does not issue is very great, since the

unconstitutional passage of the Senate Bill by the House of Representatives cannot

be adequately remedied by an award of monetary damages.  If a preliminary

injunction does not issue, the President will be free to sign, enforce and implement

the resulting health care reform bill presented to him after its unconstitutional

passage by the House.

On the other hand, issuance of a preliminary injunction will result in little or

no harm to the President, or to the House of Representatives.  The preliminary injunction simply restrains the President from either signing or enforcing or implementing a bill that is null and void for failure to adhere to the requirements of the Constitution in its passage.  Thus, the likelihood of irreparable harm to Plaintiffs far outweighs the harm, if any, to the President or the House.

### IV.  The Public Interest Favors Issuance of the Requested Preliminary Injunction.

The Fourth Circuit has recognized that, "upholding constitutional rights serves the public interest." *Newsom v. Albemarle County School Bd.*, 354 F.3d 249, 261 (4th Cir. 2003).  The Seventh Circuit has likewise recognized that remedying constitutional violations "certainly serve the public interest." *Preston v. Thompson*, 589 F.2d at 303 n. 3.

In this case, issuance of a preliminary injunction to prevent the President from signing and/or enforcing or implementing a health care reform bill that has been passed by the House without adhering to the mandatory requirements of the Constitution would certainly serve the public interest.  Preservation of the principles of "no taxation without representation" that is served by the Origination Clause and bicameralism that is served by the requirements of Article I, Section 7 are necessary to prevent the exercise of tyranny and arbitrary power to the grave detriment of the citizenry of the United States.

### CONCLUSION

As Plaintiffs have demonstrated all four elements for the issuance of a preliminary

injunction, Plaintiffs respectfully request that their motion for a preliminary injunction be granted, and that an Order be entered temporarily restraining the President from signing any health care reform bill that originated in the Senate that is then passed by the House of Representatives and presented to President for his signature, or from signing any health care reform bill that is passed by the House of Representatives pursuant to a House rule that "deems" the bill to have been passed without a direct vote on the bill being taken by the members of the House of Representatives, or, in the alternative, enjoining the enforcement and implementation of any such health care reform bill after it is signed by the President.

Respectfully submitted,

_____
R. Martin Palmer
Law Offices of Martin Palmer
21 Summit Avenue
Hagerstown, MD 21740
(301) 790-0640
(301) 790-0684 (Facsimile)
info@martinpalmer.com
Attorney for Plaintiffs